1  CHARLES A. BONNER, ESQ.  SB# 85413
   A. CABRAL BONNER, ESQ. SB# 247528
2  **LAW OFFICES OF BONNER & BONNER**
   1913 BRIDGEWAY
3  SAUSALITO, CA 94965
   TEL: (415) 331-3070
4  FAX: (415) 331-2738

5  ATTORNEYS FOR PLAINTIFF
   MICHAEL FOSTER
6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10 MICHAEL FOSTER,                      Case No:   Cv-08-1944 EDL

11         Plaintiff,                   **PLAINTIFF'S MEMORANDUM OF
                                        POINTS AND AUTHORITIES IN
12    v.                                OPPOSITION TO MOTION TO
                                        DISMISS**
13 CITY OF OAKLAND, AUDREE
   JONES-TAYLOR, and DOES 1-50
14 inclusive                            Date:  July 22, 2008
                                        Time:  9:00 a.m.
15         Defendants.                  Dpt:   Courtroom E, 15th Floor

16

17 _____/

PLAINTIFF'S MP&A IN OPPOSITION TO MOTION TO DISMISS

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    LEGAL STANDARDS FOR RULE 12(B)(6) MOTIONS . . . . . . . . . . . . . . . . . 2

    B.    PLAINTIFF'S FIRST CAUSE OF ACTION CANNOT BE DISMISSED BECAUSE PLAINTIFF HAS ALLEGED THAT DEFENDANT KNEW HE HAD A DISABILITY AND THAT LIMITATION FROM THE DISABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.    PLAINTIFF'S FIRST CAUSE OF ACTION AGAINST JONES-TAYLOR INDIVIDUALLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.    PLAINTIFF'S SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT CANNOT BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    E.    PLAINTIFF'S SECOND AND THIRD CAUSE OF ACTION AGAINST JONES-TAYLOR INDIVIDUALLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    F.    PLAINTIFF'S THIRD CAUSE OF ACTION FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CANNOT BE DISMISSED . . . . . . . . . . 8

    G.    PLAINTIFF'S FOURTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CANNOT BE DISMISSED . . . . . . . . . . . . . . . 9

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Colle v. Brazos County, Texas, 981 F2d 237, (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Conley v. Gibson 355 US 41, (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cooper v. Neiman Marcus Group, 125 F.3rd 786, (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 8

Diaz v. Federal Express Corp., 373 F. Supp. 2d 1034, (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Gilligan v. Jamco Develop. Corp., 108 F3d 246, (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 3

Head v. Glacier Northwest, Inc., 413 F3d 1053, (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 6

Humphrey v. Memorial Hosp. Ass'n, 239 F3rd 1128, 1137 (9th Cir. 2001) . . . . . . . . . . . . . . 7, 8

Miller v. National Cas. Co., 61 F.3d 627, (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pareto v. F.D.I.C., 139 F3d 696, (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Parks School of Business, Inc. v. Symington, 51 F3d 1480, (9th Cir. 1995) . . . . . . . . . . . . . . . 4

Sutton v. United Airlines, Inc. 527 US 471, (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Taylor v. Phoenixville School Dist.,184 F3d 296, (3rd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Redwood City, 640 F2d 963, (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATE CASES**

Alcorn v. Anbro Eng., Inc., 2 Cal.3rd 493, 499 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Angell v. Peterson Tractor, Inc., 21 Cal.4th 981 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Brundage v. Hahn, 57 Cal. App. 4th 228 (2nd Dist. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Foley v. Interactive Data Corp., 47 Cal. 3d 654, 677 (1988) . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Guz v. Bechtel Nat'l., Inc., 24 Cal. 4th 317, 337 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kelecheva v. Multivision Cable T.V. Corp., 18 Cal.4th 521, 531-532 (1993) . . . . . . . . . . . . . 10

Pugh v. See's Candies, Inc., 116 Cal. App. 3d 311, 327 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . 9

**FEDERAL RULES**

42 USC §12112(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## I. INTRODUCTION

Plaintiff Michael Foster was victimized twice: first, when he was savagely attacked at the Recreation Center where he was working; and then when he was terminated while still recuperating from his injuries. Faced with these grave injustices, Mr. Foster brought a lawsuit to assert his rights under the ADA and FEHA. Defendants responded with a motion to dismiss under FRCP 12(b)(6).

## II. FACTUAL ALLEGATIONS

Mr. Foster was hired by Oakland Office of Parks and Recreation as the acting director of the Allendale Recreation Center, a recreational center that provides activities for young people after school, on weekends, and during the summer.

On or about November 15, 2006, Mr. Foster was savagely attacked at the Allendale Center where he was working. Mr. Foster's treating physician diagnosed him with a concussion, Post Concussion Syndrom, cervical strain, contusion of face scalp and neck, and contusion of the lower leg. As a result of these injuries, Mr. Foster suffered severe cognitive impairment. He was unable to work for at least five weeks following the attack as he needed to sleep constantly. After his return to work, he felt more irritable, more emotional, and suffered bouts of anger and sadness. His main problem was first a total memory loss, then a partial memory loss that still lingers to this day.

On January 4, 2007, Irene Lumague, a Return-to-Work Specialist for JT2 Integrated Resources, informed Mr. Foster that he was participating in the City of Oakland's Transitional Duty Program from November 29, 2006 to February 26, 2007. On January 11, 2007, Gloria Vvalerio of JT2 Integrated Resources informed Mr. Foster that his doctor thought he may have physical limitations from the injuries he sustained in the attack.

On March 26, 2007, Mr. Foster was assigned to oversee the programs, facility, and staff at the Brookdale Recreation Center in addition to assisting in the transition of the Allendale programs.

On May 7, 2007, Irene Lumague informed Mr. Foster that he was participating in the City of Oakland's Transitional Duty Program from April 7, 2007 to July 5, 2007. Both the January 4, 2007 and the May 7, 2007 letters from JT2 Integrated Resources stated: "Please note this program is to help you return to work while you are recovering from your injury and with the assumption that you will be able to return to your usual and customary work. The transitional duty assignments and

/or duties you will be doing are temporary and is NOT a permanent accommodation of your temporary work restrictions."

On August 17, 2007, Mr. Foster was told that he would be terminated on August 24, 2007 for the alleged failure to fulfill his administrative duties in a timely manner.

### III.   ARGUMENT

**A.   LEGAL STANDARDS FOR RULE 12(B)(6) MOTIONS**

Rule 12(b)(6) motions are disfavored by courts, partly because of the lesser role pleadings play in federal practice: "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."  *Gilligan v. Jamco Develop. Corp.*, 108 F3d 246, 249, (9th Cir. 1997) (internal quotes omitted); *see also, Colle v. Brazos County, Texas,* 981 F2d 237, 243, (5th Cir. 1993) (challenges to "bare-bones pleadings" are doomed with respect to an attack based on a failure to state a claim).  A 12(b)(6) dismissal should only be granted in "extraordinary" cases. *United States v. Redwood City,* 640 F2d 963, 966, (9th Cir. 1981).

The complaint must be construed in the light most favorable to plaintiff and "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 US 41, 45-46, 78 S.Ct. 99, 102, (1957); *see also Parks School of Business, Inc. v. Symington* (9th Cir. 1995) 51 F3d 1480, 1484 (same).  In reviewing a Rule 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F3d 696, 699, (9th Cir. 1998).

**B.   PLAINTIFF'S FIRST CAUSE OF ACTION CANNOT BE DISMISSED BECAUSE PLAINTIFF HAS ALLEGED THAT DEFENDANT KNEW HE HAD A DISABILITY AND THAT LIMITATION FROM THE DISABILITY**

Defendants argue that Mr. Foster failed to show in his complaint that Defendant knew he had a disability and that he had requested an accommodation.  As will be shown, this argument is meritless.

It should be noted at the onset of this discussion that Defendants rely heavily on cases from circuits other than the 9th Circuit and, most importantly, on cases that were decided at the summary judgment level.  Here, we are at the pleading stage of the proceedings. Mr. Foster has alleged facts

constituting a cause of action for discrimination. Discovery will allow Mr. Foster to prove the allegations of his complaint.

In "order to establish a prima facie case of discrimination, a plaintiff must show: (1) he suffered from a disability; (2) he was otherwise qualified to do his job; and (3) he was subjected to adverse employment action because of his disability." *Diaz v. Federal Express Corp.*, 373 F. Supp. 2d 1034, 1062-1063 (2005). In his complaint, Mr. Foster has alleged facts stating a cause of action for discrimination based on disability. After the savage November 15, 2006 beating, Mr. Foster was diagnosed with very severe physical injuries. As a result of the beating, Mr. Foster also suffered from serious cognitive impairment . Thus, Mr. Foster has alleged in his complaint that he suffered from an actual impairment as defined in *Sutton v. United Airlines, Inc.* 527 US 471, 477, (1999).

As for the second prong of *Diaz*, Mr. Foster was highly qualified as he had worked in community service for over forty (40) years. Finally, he was subject to the ultimate adverse employment action: he was terminated without any prior warning.

Defendants' main argument is that they were unaware of Mr. Foster's disability. This is false on the face of the complaint. Mr. Foster has alleged in his complaint that Defendants knew he had a disability, and that some accommodations were necessary.

Defendants knew of the disability for several reasons. First of all, Defendants obviously knew of the underlying attack and the resulting physical injuries. This was a horrendous attack that took place at one of City of Oakland's own Recreation Centers. Several youth and staff witnessed the attack. Defendant Audree Jones-Taylor herself went to visit Mr. Foster in the hospital after the attack.

In an article for I Love Oakland published after the attack, Journalist Sheila D'Amico painted Michael Foster as a local hero. She wrote that he had suffered "a bit of memory loss and loss of some cognitive functions" as a result of the attack. As Mr. Foster himself described in the article: "My mind sometimes goes through a meltdown, freezes, and slows down, then reboots and is up running again." Ms. D'Amico concluded that she had found "the same, optimistic, community-minded Michael who was facing the task of building up the Center's programs." Thus, since Mr. Foster's cognitive problems were disclosed to the public, and Defendant Jones-Taylor

PLAINTIFF'S MP&A IN OPPOSITION TO MOTION TO DISMISS                                    3

visited him in the hosptial, Defendants will be hard pressed to argue that they were unaware of Mr. Foster's disability.

In addition, because of his cognitive problems, Mr. Foster was referred to the City Counseling Resource, where he saw a psychiatrist and underwent psychological treatments for his impairment. Mr. Foster has been told that the psychiatrist reported his findings to Kip Walsh at the Department of Parks and Recreation. Ms. Walsh in turn was in communication with Gloria Vvalerio of JT2 Integrated. JT2 Integrated is a private company that handles worker compensation claims on behalf of public agencies, including the City of Oakland. As alleged in the complaint, JT2 Integrated twice informed Mr. Foster that his doctor thought he may have physical limitations from the injuries he sustained as a result of the attack and that his progress would be monitored until his condition stabilized. It is more likely than not that Mr. Foster's supervisors at Defendant City of Oakland, including Defendant Jones-Taylor, knew about his disability since the worker compensation adjuster had made a recommendation that "his progress would be monitored until his condition stabilized."

Finally, the fact that Mr. Foster kept his direct supervisor, Jennifer Koney, appraised of his health condition on a weekly basis, is a direct indication that the defendants knew about his disability. In addition to the weekly updates, from about May 15, 2007 to the time of his termination in August 2007, Mr. Foster sent several memos to Ms. Koney, outlining his difficulties and progress. There are no facts so far to suggest that Ms. Koney did not communicate with her supervisor, Jones-Taylor.

Both the January 4, 2007 and the May 7, 2007 letters from JT2 Integrated are evidence that the City regarded Mr. Foster as needing accommodations from November 29, 2006 to February 26, 2007 and from April 7, 2007 to July 5, 2007. The employer had knowledge of the disability. Mr. Foster spoke freely of his difficulties with his memory. These symptoms were so obviously manifestations of an underlying disability that it is a reasonable to infer that the employer actually knew of the disability. *Miller v. National Cas. Co.*, 61 F.3d 627, (8th Cir. 1995).

Thus, Mr. Foster has alleged in his complaint that the employer had knowledge of his disability when the adverse employment decision was made. *Brundage v. Hahn,* 57 Cal. App. 4th

PLAINTIFF'S MP&A IN OPPOSITION TO MOTION TO DISMISS                   4

1  228, 238, 66 Cal. Rptr. 2d 830 (2nd Dist. 1997).

2  By sheer force of will and perseverance, Mr. Foster worked as diligently as he could. However, this fact does not negate his significantly restricted ability to think and concentrate. See *Head v. Glacier Northwest, Inc.* 413 F3d 1053, 1061, (9th Cir. 2005). Mr. Foster possessed the requisite skills and was capable of performing the essential functions of his position.

6  Contrary to Defendant's argument, Mr. Foster did not demand clairvoyance from his employer. Not only did Mr. Foster assert his disability, but he was also aware of and shared with his supervisor the limitations[1] resulting from his disability. He told his direct supervisor, Ms. Koney, that he had trouble performing some of his duties and he asked for help with administrative duties. He also told his supervisor that the new assignment to Brookdale, while still working at Allensdale, was more than he could handle.

12  Defendants failed to make reasonable accommodations by forcing Mr. Foster to perform two job assignments, knowing full well that Mr. Foster was cognitively impaired. Failure to provide reasonable accommodation constitutes discrimination under the ADA. *42 USC §12112(b)(5).*

15  Although it is generally the employee's duty to request an accommodation, if the employer learns from any source that the employee has a potential disability that requires some accommodations, the employer is under a duty to initiate discussions concerning the need for an accommodation. *Taylor v. Phoenixville School Dist.,* 184 F3d 296, 314-315 (3rd Cir. 1999). Furthermore, once an employer becomes aware to the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. *Humphrey v. Memorial Hosp. Ass'n*, 239 F3rd 1128, 1137 (9th Cir. 2001). Defendants failed on both counts: they did not initiate a discussion concerning the needs for accommodations; and they did not engage in an interactive process to identify and implement appropriate reasonable accommodations. On the contrary, Defendants kept asking more and more from Mr. Foster at a time when he was struggling very hard

---

[1] Because the FEHA requires only a "limitation" on a major life activity, individuals with short-term conditions may qualify under the FEHA. *Diaz v. Federal Express* 373 F.Supp.2d 1034 (2005)

with his cognitive impairment.

As Defendants point out, in some cases, an employee is exempt from making a request for accommodation when his disability prevents him from requesting an accommodation. Here, the trauma in itself, in addition to Mr. Foster's dedication to community service, may have prevented him from unequivocally asserting his rights as a disabled person. Community service is his passion, to the point of forgetting his own well-being. For example, immediately after the attack, he tried to comfort employees and youth present at the scene, not realizing that the blood gushing from his head wounds were partially the cause of these young people's upset.

Even though Mr. Foster was putting on a brave face, he was aware of his limitations with the administrative aspects of his position. For example, he missed meetings because he had trouble remembering that there was a meeting in the first place. He told his supervisor, Ms. Koney, that he could not take the pressure of the both positions and that he needed additional help to perform the administrative tasks.

In this case, the accommodations were simple and would not have resulted in undue hardship to the Defendants. Mr. Foster needed help with the administrative functions of his position. Another reasonable accommodation would have been to avoid assigning Mr. Foster two very demanding positions at a time when Mr. Foster was struggling to maintain as much capability as possible under the circumstances. There were tremendous demands in both places: at Allendale, Mr. Foster had worked hard to uplift the appearance of the center and the surrounding park, organize programs and events, and empower the center's staff. Brookdale, on the other hand, had no program and it was presumably Mr. Foster's responsibility to implement programs.

It is clear that Defendants discharged Mr. Foster because of his disability. *Cooper v. Neiman Marcus Group* 125 F.3rd 786, 790 (9th Cir. 1997). Defendants terminated Mr. Foster for his alleged failure to fulfill his administrative duties in a timely manner.[2] Mr. Foster had timely notified his supervisor of his difficulties with maintaining both positions and specifically with the administrative tasks. The link between the disability and the termination is particularly strong where it is the

---

[2] It should be noted also that Mr. Foster was never given a chance to rectify any perceived problems with his administrative skills. He was fired without so much as a verbal warning.

PLAINTIFF'S MP&A IN OPPOSITION TO MOTION TO DISMISS                                       6

1 employer's failure to reasonably accommodate a known disability that leads to discharge for
2 performance inadequacies resulting from that disability. *Humphrey v. Memorial Hosp. Ass'n* (9th
3 Cir. 2001) 239 F.3rd 1128, 1140. This is exactly what happened to Mr. Foster. His disability made
4 it difficult for him to concentrate and remember and to perform administrative tasks. Even though
5 he performed well in other functions, he was terminated for his alleged failure to perform
6 administrative tasks in a timely fashion. In essence, he was terminated because of his disability and
7 in spite of his disability.

8 Defendants' argument that Mr. Foster was assigned to Brookdale at a time period he was not
9 in the Transitional Duty Program is particularly absurd (and ruthless). Mr. Foster was in the
10 Transitional Program from November 29, 2006 to February 26, 2007 and from April 7 to July 5,
11 2007. It is technically true that he was not the Transitional Program on March 26, 2007, when
12 Jones-Taylor wrote the letter assigning him to Brookdale. However, he was on the transitional
13 program before and after the assignment to Brookdale. Jones-Taylor knew, or should have known,
14 that he returned to the Transitional Program on April 7, two days before starting the Brookdale
15 position. Instead of assigning Mr. Foster to Brookdale, Jones-Taylor should have engaged in an
16 interactive process with him to identify and implement appropriate reasonable accommodations.

17 In sum, Mr. Foster's complaint unequivocally states facts constituting a cause of action for
18 disability discrimination both under the ADA and FEHA. This cause of action cannot be dismissed.

**C. PLAINTIFF'S FIRST CAUSE OF ACTION AGAINST JONES-TAYLOR INDIVIDUALLY**

21 Defendant Jones-Taylor's conduct towards Mr. Foster was so outrageous that the law should
22 allow for an exception to the general rule that supervisors cannot be held personally liable for ADA
23 violations. For example supervisors can be held personally liable under the FEHA for harassing
24 other employees. Likewise, Defendant Jones-Taylor's conduct would justify the carving of an
25 exception as to her personal liability.

**D. PLAINTIFF'S SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT CANNOT BE DISMISSED**

28 In California, employment having no specified term is presumed to be at will. Cal. Lab. Code

1 § 2922. However, this presumption may be superseded by a contract, express or implied, limiting the employer's right to discharge the employee, such as the requirement that termination be only "for cause." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 677 (1988).

Under *Foley,* in the absence of an express contract, the "totality of the circumstances" must be examined to determine whether the parties' conduct, considered in the context of surrounding circumstances, gave rise to an implied-in-fact contract limiting the employer's termination rights. *Guz v. Bechtel Nat'l., Inc.*, 24 Cal. 4th 317, 337 (2000) (citing *Foley*, 47 Cal. 3d at p. 681). Determining factors include longevity of service, exemplary service, lack of criticism of the employee's performance, assurances by the employer, and the employer's acknowledged policies and practices. *Guz.*, 24 Cal. 4th at p. 37, *Pugh v. See's Candies, Inc.*, 116 Cal. App. 3d 311, 327 (1981).

Mr. Foster has alleged in his complaint that he had an expectation of continued employment as long as he carried out his duties in a proper and competent manner. While he had only worked 15 months in his position with Defendant, he had a stellar reputation and a lengthy experience in the field of community work. Until his summary dismissal, he had only received praises for his job and had become the center's director.

Finally, one of the limitations on At-Will Employment are the statutes prohibiting discrimination. Here, Mr. Foster has brought a cause of action for discrimination based on disability. Thus, the exception to the at-will employment applies and Defendants are precluded to have the second cause of action for breach of contract dismissed.

**E.   PLAINTIFF'S SECOND AND THIRD CAUSE OF ACTION AGAINST JONES-TAYLOR INDIVIDUALLY**

Plaintiff is dismissing the causes of action for breach of contract and breach of the covenant of good faith and fair dealing ONLY against Defendant Jones-Taylor.

**F.   PLAINTIFF'S THIRD CAUSE OF ACTION FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CANNOT BE DISMISSED**

A breach for an implied in fact contract not to terminate without good cause may also constitute a breach of the implied of good faith and fair dealing. *Guz v. Bechtel Nat'l, Inc.*, 24

Cal.4th 317, 352 (2000).

More generally, a covenant of good faith and fair dealing is implied by law in all contracts. The covenant requires that neither party do anything to deprive the other of the benefits of the agreement. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 683-684 (1988). In the employment context, the implied covenant prevents the employer from frustrating the employee's enjoyment of rights provided by the contract, including the right to continued employment absent good cause for discharge. *Kelecheva v. Multivision Cable T.V. Corp.*, 18 Cal.4th 521, 531-532 (1993).

Here, Mr. Foster has alleged in his complaint that Defendants breached the implied covenant of good faith and fair dealing by failing to provide him with reasonable accommodations, by doubling his work load when he was still recovering from the vicious attack, and by firing him for failing to meet expectations when he had not been provided reasonable accommodations.

Therefore, the cause of action of breach of the covenant of good faith and fair dealing cannot be dismissed at this stage of the proceedings.

### G.    PLAINTIFF'S FOURTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CANNOT BE DISMISSED

The FEHA prohibition on disability discrimination supports a common law tort action for termination in violation of fundamental public policy. *Angell v. Peterson Tractor, Inc.*, 21 Cal.4th 981 (1994). Likewise, an employee can recover for intentional infliction of emotional distress if the employer's actions were so extreme and outrageous as to go beyond all possible bonds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Alcorn v. Anbro Eng., Inc.*, 2 Cal.3rd 493, 499 (1970).

Here, Mr. Foster's claim for intentional infliction of emotional distress does not rely on the personnel decisions made by Defendants. Rather, his claim relies on the unlawful discrimination to which he was subject. Mr. Foster has alleged that firing him as he was recovering from a brutal and vicious beating after failing to provide him with reasonable accommodations was extreme, outrageous and unprivileged beyond the scope of conduct which should be tolerated in a Democratic and Civilized Society.

Thus, Mr. Foster's claim for intentional infliction of emotional distress cannot be dismissed

neither against the City, nor against Jones-Taylor.

## IV. CONCLUSION

For all the reasons described above, Defendants City of Oakland and Jones-Taylor's motion to dismiss should be denied. In the alternative, plaintiff should be granted leave to amend his complaint.

DATED: July 1, 2008

**LAW OFFICES OF BONNER AND BONNER**

By: /s/
A. CABRAL BONNER
ATTORNEY FOR PLAINTIFF