Eugene B. Elliot, State Bar No. 111475
Christine Lee, State Bar No. 231617
Joshua K. Clendenin, State Bar No. 245564
BERTRAND, FOX & ELLIOT
The Waterfront Building
2749 Hyde Street
San Francisco, California 94109
Telephone:   (415) 353-0999
Facsimile:    (415) 353-0990

Vicki A. Laden, State Bar No. 130147
Supervising Deputy City Attorney
Oakland City Attorney's Office
One Frank Ogawa Plaza, 6th Floor
Oakland, CA 94612
Tel. (510) 238-4941
Fax (510) 238-6500

Attorneys for Defendants
CITY OF OAKLAND and ANDREE JONES-TAYLOR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FOSTER. | Case No.: CV-08-1944 EDL |
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT** |
| vs. | |
| CITY OF OAKLAND, AUDREE JONES-TAYLOR, and DOES 1-50, inclusive, | Date: July 15, 2008<br>Time: 10:00 a.m.<br>Dept: Courtroom E, 15th Floor |
| Defendants | Magistrate Judge Elizabeth D. Laporte |

The parties jointly submit this case management statement in anticipation of their initial case management conference in this case.

**1.  Jurisdiction and Service**

Plaintiff MICHAEL FOSTER filed this case on April 11, 2008 in the United States District Court for the Northern District of California. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 on the basis of federal question jurisdiction. The complaint alleges that plaintiff was subject to discrimination based on disability under Title I of the Americans with Disabilities Act of 1990

1

("ADA") and the California Fair Employment and Housing Act ("FEHA"). Plaintiff also asserts the discrimination and subsequent termination from his employment with defendant CITY OF OAKLAND constituted a breach of contract, breach of the covenant of good faith and intentional infliction of emotional distress. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 (a).

Defendants CITY OF OAKLAND ("CITY") and AUDREE JONES-TAYLOR ("JONES-TAYLOR") were served with FOSTER'S complaint on April 22, 2008.

**2. Facts**
**Facts provided by plaintiff:**

In or around June, 2006, Mr. Foster was hired by Oakland Office of Parks and Recreation (hereinafter "Parks and Rec") to run the summer camp held at the Allendale Recreation Center (hereinafter "Allendale").

At the time when Parks and Rec hired Mr. Foster, all parties understood that the summer camp directorship was, in part, an opportunity for Mr. Foster to be trained to take over as director of Allendale. After the conclusion of the Allendale summer camp, Mr. Foster was made acting director of Allendale.

On or around November 15, 2007, while working at Allendale, Mr. Foster was viciously attacked by three individuals. One of the individuals was a student who, prior to the attack, Mr. Foster instructed not to visit the website My Space. The other two were the girl's mother and the mother's boyfriend. Mother punched Mr. Foster in the face and the boyfriend hit Mr. Foster in the back of his head with a pipe wrench. The daughter then repeatedly hit Mr. Foster with a mettle chair after he had collapsed onto the floor. Mr. Foster was heavily bleeding from multiple blows to the head. Despite his wounds and the violent onslaught Mr. Foster managed to regain a standing position. When he did so, the attackers fled the scene.

An ambulance took Mr. Foster to the Summit Medical Center emergency room. Soon after arriving, Mr. Foster passed out and vomited. Mr. Foster was told he has a concussion and a contusion on his right thigh. The five cuts on his head required a total of 22 stitches.

As a result of the savage and vicious attack, on November 29, 2007, Mr. Foster'S treating

1  provider Dr. Blake R. Collier diagnosed Mr. Foster with the following injuries: concussion, Post
2  Concussion Syndrom, cervical strain, Contusion of face scalp and neck, and contusion of lower leg.
3         In a letter dated January 4, 2007, Irene Lumague, a Return to Work Specialist for JT2
4  Integrated Resources informed Mr. Foster that he was participating in the City of Oakland's
5  Transitional duty Program. Mr. Foster was informed in the letter that he had been in the program
6  since November 29, 2007 and that his 90th day would be February 26, 2007.
7         In a letter dated January 11, 2007,Gloria Vvalerio of JT2 Integrated Resources informed Mr.
8  Foster that his doctor thinks Mr. Foster may have physical limitations from the injuries Mr. Foster
9  sustained as a result of the attack. The letter goes on to inform Mr. Foster that his progress would be
10 monitored until his condition stabilized. Once Mr. Foster's condition stabilized, there would be an
11 evaluation to determine the extent of his disability. Complainant is informed believes and based
12 upon this belief alleges that this letter was part of Mr. Foster personnel file.
13        In a letter dated March 26, 2007, JONES-TAYLOR informed Mr. Foster that as of April 9,
14 2007, he was assigned to oversee the programs, facility, and staff at the Brookdale Recreation Center
15 (hereinafter "Brookdale"). In addition to making the transition into the new position directing
16 Brookdale, the March 26, 2007 letter informed Mr. Foster, that he was also to assist in the transition
17 of the Allendale programs. During Mr. Foster's recovery, while he was participating in the City of
18 Oakland's Transitional Duty Program, instead of making reasonable accommodations, JONES-
19 TAYLOR and CITY effectively doubled Mr. Foster's workload.
20        In a letter dated May 7, 2007, Irene Lumague, a Return to Work Specialist for JT2 Integrated
21 Resources once again informed Mr. Foster that he was participating in the City of Oakland's
22 Transitional duty Program. Mr. Foster was informed in the letter that he had been in the program
23 since April 7, 2007 and that his 90th day would be July 5, 2007. Both the January 4, 2007 and the
24 May 7, 2007 letters from JT2 Integrated Resources stated: Please note this program is to help you
25 return to work while you are recovering from your injury and with the assumption that you will be
26 able to return to your usual and customary work. The transitional duty assignments and /or duties you
27 will be doing are temporary and is NOT a permanent accommodation of your temporary work
28 restrictions.

1     Despite Mr. Foster's participation in a second 90-day Transitional Duty Program, JONES-
2 TAYLOR took no steps to reasonably accommodate Mr. Foster's need for modified duties and
3 assignments.  Additionally, despite still recovering from the traumatic attack, Mr. Foster spent the
4 spring and summer months working to uplift the appearance of the center and the surrounding park,
5 organize programs and events, and empower the center's staff.  Though still recovering and dealing
6 with the lingering effects of his head injury, Mr. Foster worked 12 to 14 hour days, six to seven days
7 a week, as needed.

8     In addition, because of his cognitive problems, Mr. Foster was referred to the City Counseling
9 Resource, where he saw a psychiatrist and underwent psychological treatments for his impairment.
10 Mr. Foster has been told that the psychiatrist reported his findings to Kip Walsh at the Department of
11 Parks and Recreation.  Ms. Walsh in turn was in communication with Gloria Vvalerio of JT2
12 Integrated.  JT2 Integrated is a private company that handles worker compensation claims on behalf
13 of public agencies, including the City of Oakland.  JT2 Integrated twice informed Mr. Foster that his
14 doctor thought he may have physical limitations from the injuries he sustained as a result of the attack
15 and that his progress would be monitored until his condition stabilized.

16     Mr. Foster kept his direct supervisor, Jennifer Koney, apprised of his health condition on a
17 weekly basis.  In addition to the weekly updates, from about May 15, 2007 to the time of his
18 termination in August 2007, Mr. Foster sent several memos to Ms. Koney, outlining his difficulties
19 and progress.

20     On or around Friday, August 17, 2007, Mr. Foster was asked to report to a meeting with the
21 Director of Oakland Parks and Recreation, JONES-TAYLOR and his immediate supervisor, Jennifer
22 Koney.  At this meeting Mr. Foster was informed that his probation was being terminated and that he
23 was going to be placed on administrative leave until his official release on August 24, 2007.

24     At the meeting JONES-TAYLOR told Mr. Foster that the reason she was releasing him was
25 because he had not fulfilled his administrative duties in a timely manner and was not as sufficiently
26 competent in completing administrative tasks as she would have liked.  Mr. Foster was offered no
27 opportunity to discuss the issue nor was he given the option to be reclassified as a Recreation
28 Specialist, the position he held before he was promoted to Acting Director at Allendale.

**Facts provided by defendants:**

Plaintiff was hired for a probationary position with the CITY'S Allendale Recreation Center as a "Part-time Recreational Specialist 1" on June 3, 2006.  Defendant JONES-TAYLOR is the Director of the CITY'S Parks and Recreation Division.  Jennifer Koney was the General Recreation Supervisor for the CITY and was plaintiff's direct supervisor at the Allendale Recreation Center ("Allendale").  Immediately after plaintiff began working at the CITY, both JONES-TAYLOR and Ms. Koney noted that plaintiff lacked the necessary skills to adequately perform his job.  Plaintiff demonstrated difficulty with writing and public speaking, two elements of his position.  The Allendale Recreation Center's main purpose is to provide youth-centered services.  Plaintiff had difficulty working with the youth at the Allendale Recreation Center.  He was late for meetings or missed them altogether, made excuses about his performance and could not maintain control over the children inside the recreation facility.  Further, plaintiff demonstrated that he was unable to manage his budget, after he depleted the year's entire budget in nine weeks.

While at work on November 15, 2006, plaintiff was assaulted by a young girl and her family. He sustained physical injuries which required medical treatment.  He filed a Workers' Compensation claim for these injuries on or about November 28, 2006.

Plaintiff was placed in the CITY's Transitional Duty Program on November 29, 2006.  The Transitional Duty Program provided plaintiff with a transitional assignment while recovering from his injury.  However, an employee is not required to participate in the Transitional Duty Program and may opt out of the Program at any time.  The Transitional Duty Program is a service for employees injured on the job and does not play a role in providing accommodations for a disabled employee.

Persons may be placed in the Transitional Duty Program for a period not to exceed 90 days. Plaintiff's 90-day period was to expire on February 26, 2007.  Plaintiff was released to return to work with restrictions on December 6, 2006.  He was released to full duty without any work restrictions on January 5, 2007 by Blake R. Collier, PA-C, with the Concentra Occupational Medical Center (the medical center used by the CITY to evaluate workers' injuries).  Plaintiff returned to work on January 5, 2007.  He was officially appointed Director of Allendale on January 27, 2007.

On or about March 2007, after plaintiff was no longer enrolled in the Transitional Duty

1  Program, plaintiff's assignment at Allendale Recreation Center changed to include the Brookdale
2  Recreation Center ("Brookdale").  Plaintiff was assigned to Brookdale because of complaints about
3  his ability to exert control over Allendale and his poor job performance.

4  On or about April 5, 2007, plaintiff injured his elbow and shoulder at work while putting
5  away equipment.  He filed a workers' compensation claim on account of that injury, but missed no
6  time from work.  He was not enrolled in the CITY'S Transitional Duty Program a second time.

7  Plaintiff's work assignment was changed effective May 21, 2007 to oversee only Brookdale
8  in an effort to reduce his workload.  Brookdale is a smaller facility than Allendale.  Ms. Koney
9  worked with plaintiff to provide guidance on improving his performance.  A memorandum dated July
10 25, 2007 summarized plaintiff's job performance and noted multiple areas of concern.

11 On August 24, 2007, plaintiff was released from his probationary position of Recreation
12 Program Director for the CITY.  Plaintiff was released because he did not demonstrate the minimum
13 job requirements and skills necessary to continue as a Recreation Program Director.  At the time of
14 his release, plaintiff was a probationary employee.

15 During his employment, plaintiff never mentioned to anyone with the CITY that he had a
16 disability.  The CITY did not perceive him to be a disabled individual.  He never requested a
17 particular accommodation from the CITY.  He never asked for a different job assignment and never
18 protested his job assignment.

19 Plaintiff filed an untimely grievance about his termination on or about August 31, 2007.
20 Further, the grievance procedure was not available for probationary employees.

21 On August 31, 2007, plaintiff wrote a letter to defendant JONES-TAYLOR, protesting his
22 termination.  Plaintiff never mentions in that letter his alleged disability.  Plaintiff wrote a second
23 letter on October 2, 2007 to the Oakland Parks and Recreation department concerning his
24 termination.  He never mentions an alleged disability or refusal to provide reasonable
25 accommodations.

26 Plaintiff filed a Tort Claim with the CITY on January 7, 2008.  The claim was denied on
27 February 1, 2008.  Plaintiff filed a complaint with the EEOC on February 4, 2008.
28 ///

**(a) Principal Factual Issues In Dispute:**

1. Whether plaintiff was hired with the understanding that he was being trained to take over as director of the Allendale Recreation Center?

2. Whether plaintiff was a disabled individual for the purposes of the Americans With Disabilities Act and FEHA?

3. Whether plaintiff requested a reasonable accommodation from the CITY for his alleged disability?

4. What were the facts showing the CITY knew plaintiff needed an accommodation for a disability?

5. What were the facts showing that the CITY had a duty to provide plaintiff with a reasonable accommodation for a disability?

6. What were the factual reasons supporting plaintiff's change in assignment to include Brookdale Recreation Center?

7. Whether plaintiff's assignment to the Brookdale Recreation Center doubled his workload?

8. Whether plaintiff worked 12 to 14 hours a day, six to seven days a week as needed, and why?

9. Whether plaintiff was enrolled in the Transitional Duty Program a second time?

10. The nature and purpose of the Transitional Duty Program.

11. Whether Ms. Lumague's May 7, 2007 letter outlined accommodations for plaintiff?

12. What were the factual reasons supporting the CITY'S decision to release plaintiff?

13. Whether plaintiff's position was probationary during his employment with the CITY?

14. What were the facts showing the CITY'S policy and procedure for requesting accommodations for a disability?

15. What were the facts showing that plaintiff was aware of the CITY'S policy and procedure for requesting accommodations for a disability?

16. What were the factual reasons behind plaintiff's change of assignment in May 2007?

17. Whether CITY had knowledge of Mr. Foster's disability?

18.  Whether JONES-TAYLOR had knowledge of Mr. Foster's disability?

19.  Whether CITY or JONES-TAYLOR initiated any discussions about accommodations?

20.  Whether CITY or JONES-TAYLOR had any issue with Foster's performance prior to the attack and the resulting loss of cognitive ability?

21.  What is the CITY'S policy and procedure for dealing with employees who are part of the Transitional Duty Program?

22.  Whether or not JONES-TAYLOR had training or knowledge on what constitutes discrimination?

**3.    Legal Issues**

Defendants have a Motion to Dismiss pending that raises the following legal issues:

a.  Whether plaintiff's first cause of action fails to state a claim for disability discrimination under the ADA and FEHA because he fails to state facts to show that defendants were aware of his disability;

b.  Whether plaintiff's first cause of action fails to state a claim for disability discrimination under the ADA and FEHA because he fails to state facts to show he requested accommodations from defendants;

c.  Whether plaintiff's first cause of action for disability discrimination under the ADA and FEHA is barred against JONES-TAYLOR;

d.  Whether plaintiff fails to state a claim for breach of contract because his employment is governed by statute;

e.  Whether plaintiff's second cause of action for breach of contract fails to state a cause of action because he fails to state facts to rebut the presumption that his employment was at-will;

f.  Whether plaintiff's second cause of action for breach of contract fails to state a cause of action against JONES-TAYLOR because she was in a managerial position;

g.  Whether plaintiff's third cause of action for breach of implied covenant of good faith fails to state a cause of action against JONES-TAYLOR because she acted at all times as an employee of the CITY;

h. Whether plaintiff's third cause of action fails to state a claim for breach of implied covenant of good faith because it improperly relies on his discharge in support thereof;

i. Whether plaintiff's third cause of action fails to state a claim for breach of implied covenant of good faith because it improperly relies on defendants' failure to provide reasonable accommodations in support thereof; and

j. Whether plaintiff's fourth cause of action fails to state a claim for intentional infliction of emotional distress because it is grounded on defendants' personnel decisions.

**4.  Motions**

Defendants filed a motion to dismiss on May 30, 2008. The motion is set for hearing on July 22, 2008, one week after the Initial Case Management Conference.

Defendants anticipate filing a motion summary judgment as to any claims that survive their motion to dismiss.

**5.  Amendment of Pleadings**

Unknown at this time due to defendants' pending motion to dismiss.

**6.  Evidence Preservation**

The parties are not aware of any special efforts that need to be taken with respect to evidence preservation.

**7.  Disclosures**

Initial disclosures are due on July 8, 2008, the same day as this Joint Case Management Statement. The parties have expressed their intention to exchange disclosures on that date.

Defendants will disclose documents pertinent to, and witnesses with knowledge of, plaintiff's job performance, his injury, and his workers' compensation claim.

**8.  Discovery**

The parties agree that the following proposed discovery plan and scope of discovery will most likely be modified by the Court's ruling on defendants' motion to dismiss. Additionally, the parties note that neither party will have received the other party's initial disclosures as of the due date of this Joint Statement. Considering the foregoing, the parties jointly state that any discovery plan and/or scope of discovery is tentative and may require alteration.

     a.    <u>Discovery Plan</u>:  The parties will serve written discovery and notice depositions as required under the Federal Rules of Civil Procedure and local rules.

     b.    <u>Discovery Conducted to Date</u>:  None.  Initial Disclosures are due on July 8, 2008.

     c.    <u>Limitations on Subject Matter of Discovery</u>:  The parties have agreed to limit the subject matter of discovery pursuant to Rule 26(b) of the Federal Rules of Civil Procedure.  However, this limitation may change depending on the disposition of defendants' pending motion to dismiss.

     d.    <u>Limitations on the Number of Various Discovery</u>:

The parties are unable to determine relevant limitations on various discovery at this time due to defendants' pending motion to dismiss.

     e.    <u>Discovery from Experts:</u>  The parties have not yet decided what expert testimony will be required, although expert opinions about plaintiff's alleged disability are anticipated.

     f.    <u>Deadlines for Disclosure of Witnesses and Completion Discovery</u>:

          (1)    Disclosure of identities of all witnesses to be called in each party's case in chief:  Defendants request a cutoff date consistent with the court's usual practices.

          (2)    The parties will complete discovery, except for experts:  90 days prior to trial.

          (3)    The parties agree to the disclosure of expert testimony at trial required by Rule 26(a)(2) of the Federal Rules of Civil Procedure.

          (4)    Completion of discovery from experts:  60 days prior to trial.

          (5)    Dispositive motions heard 70 days before trial.

**9.**    <u>**Class Actions**</u>

Not applicable.  This is not a class action.

**10.**    <u>**Related Cases**</u>

The parties are not aware of any related cases or proceedings.

**11.**    <u>**Relief**</u>

The parties agree that relief sought and the bases on which damages should be calculated if liability is established may change depending upon the outcome of defendants' motion to dismiss.

Plaintiff seeks reinstatement to his position with the CITY with full back pay and attorneys'

fees. At this time, defendants are unable to determine the basis on which damages should be calculated, if liability is established, as a motion to dismiss plaintiff's entire complaint is pending.

**12.   Settlement and ADR**

At this time, defendants are unable to determine the suitability of this case for settlement and alternative dispute resolution due to their pending motion to dismiss.

**13.   Consent to Magistrate Judge for All Purposes**

The parties have consented to proceed before Magistrate Judge Elizabeth D. Laporte for all further proceedings, including trial and entry of judgment.

**14.   Other References**

The parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.   Narrowing of Issues**

The issues in this case may be limited after this Court rules on defendants' motion to dismiss.

**16.   Expedited Schedule**

Whether this case is the type that can be handled on an expedited basis will be determined by this Court's ruling on defendants' motion to dismiss.

**17.   Scheduling**

Designation of expert witnesses:  April 2009

Discovery cutoff:  April 2009

Hearing of dispositive motions:  March 2009 for filing

Pretrial conference:  May 2009

Trial:  June or July 2009

**18.   Trial**

The plaintiff has requested a jury trial. The estimated length of trial is unknown at this time as defendants' motion to dismiss is pending and the legal issues involved are not yet certain.

///

///

///

**19.   Disclosure of Non-party Interested Entities or Persons**

The parties are not aware of any non-party interested entities or persons at this time.

Dated: JULY 8 , 2008          By: _____/s/_____
                                                Charles A. Bonner
                                                A. Cabral Bonner
                                                Attorneys for Plaintiff MICHAEL FOSTER

Dated: July 8, 2008                              BERTRAND, FOX & ELLIOT

                                         By: _____/s/_____
                                                Eugene B. Elliot
                                                Christine Lee
                                                Joshua K. Clendenin
                                                ATTORNEYS FOR DEFENDANTS
                                                CITY OF OAKLAND & AUDREE JONES-TAYLOR

ATTORNEY ATTESTATION

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this E-filed document.

Dated: July 8, 2008                                      _____/s/_____
                                                              Eugene B. Elliot