CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF CHARLES A. BONNER**
1913 BRIDGEWAY
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738

ATTORNEYS FOR PLAINTIFF
MICHAEL FOSTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FOSTER,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>CITY OF OAKLAND and DOES 1-50 inclusive<br><br>　　　Defendants.<br>_____/ | Case No:    CV-08-1944 EDL<br><br>**AMENDED COMPLAINT FOR DAMAGES**<br><br>1.    DISCRIMINATION (ADA , FEHA)<br><br>**JURY TRIAL DEMANDED** |

PLAINTIFF MICHAEL FOSTER alleges as follows:

## INTRODUCTION

1.    MICHAEL FOSTER brings this COMPLAINT to vindicate his constitutional, statutory and common law rights.

2.    PLAINTIFF MICHAEL FOSTER (hereinafter "FOSTER") alleges that during his tenure as an employee with the CITY OF OAKLAND (hereinafter  "CITY"), CITY discriminated against him because of his disability in violation of the ADA and FEHA.  CITY failed to take reasonable accommodations to address FOSTER'S disability and then terminated him for alleged deficiencies that were directly related to his disabilities.  Furthermore, CITY failed to reinstate FOSTER after FOSTER requested reinstatement and reasonable accommodations.

**JURISDICTION AND VENUE**

3. This action is brought pursuant to the laws of the State of California, California Civil Code §51, and Title I of the Americans with Disabilities Act of 1990. Jurisdiction is founded upon 28 U.S.C. § 1331.

4. Venue is proper in this judicial district because Plaintiff's injuries, damages and harm, including the violation of Plaintiff's Civil Rights occurred in this judicial district. Further, one or more of the DEFENDANT'S reside and conduct business in this judicial district.

5. DEFENDANTS is subject to suit in that DEFENDANT CITY is a public entity who regularly employs 15 or more persons.

**PARTIES**

6. PLAINTIFF MICHAEL FOSTER is and at all times relevant herein a citizen of the United States and a resident of Oakland, California. At all times herein mentioned PLAINTIFF MICHAEL FOSTER was an employee of DEFENDANT CITY in the Office of Parks and Recreation.

7. DEFENDANT CITY OF OAKLAND is a municipal corporation, organized under the laws of the State of California, doing business in California as a government subdivision under color of State authority and subject to the laws of this State and the United States.

**RESPONDEAT SUPERIOR**

8. All of the described conduct, acts, and failures to act are attributed to agents and employees under the direction and control, and with the permission, consent and authorization of DEFENDANT. Said acts, conduct and failures to act were within the scope of such agency and employment. At all times relevant herein, each participant was acting within the course and scope of his or her employment.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9. On January 7, 2008, FOSTER filed a Claim for Damages with the DEFENDANT CITY pursuant to Government Code 960. On February 1, 2008, CITY denied FOSTER'S Claim.

10. FOSTER filed EEOC charge number 555200800318 against the City of Oakland. On March 4, 2008, FOSTER received his EEOC Right to Sue letter. On February 4, 2008 FOSTER

AMENDED COMPLAINT

1  received a letter from the DFEH informing him that his EEOC complaint had been forwarded to the
2  DFEH.  This letter was also FOSTER'S DFEH Right to Sue letter.

**WORKER'S COMPENSATION EXCLUSIVITY DOES NOT APPLY**

4      11.    Each and every wrongful, injurious, negligent, willful, discriminatory, harassing act
5  and failure to act, by DEFENDANTS were not normal incidents of employment and were outside
6  the scope of the employment bargain.  Thus, Worker's Compensation exclusive remedy set forth in
7  California Labor Code § 3600 et seq. will not preempt nor bar PLAINTIFF'S right to recover for
8  damages set forth herein.

**STATEMENT OF FACTS**

10      12.    In or around June, 2006, FOSTER was hired by Oakland Office of Parks and
11  Recreation (hereinafter "Parks and Rec") to run the summer camp held at the Allendale Recreation
12  Center (hereinafter "Allendale").  Allendale is a recreational center that provides activities for young
13  people after school, on weekends, and during the summer.  FOSTER, through the center, sponsored
14  and hosted numerous activities for young people in Oakland.

15      13.    At the time when Parks and Rec hired FOSTER, all parties understood that the
16  summer camp directorship was, in part, an opportunity for FOSTER to be trained to take over as
17  director of Allendale.  After the conclusion of the Allendale summer camp, FOSTER was made
18  acting director of Allendale.

19      14.    On or around November 15, 2007, while working at Allendale FOSTER was
20  viciously attacked by three individuals.  The incident occurred after FOSTER reminded a 16 year
21  old female that she was not allowed to use the office computer to log onto MySpace.com. The girl
22  became belligerent and began to yell at FOSTER, using curse words.  FOSTER asked the girl to
23  leave the center. The girl left the center promising to return to commit violent acts against FOSTER.

24      15.    FOSTER immediately called the Oakland Police Department, but no officers arrived
25  for over 20 minutes. Meanwhile, the girl returned with her mother, the mother's boyfriend and girl's
26  younger sister. FOSTER and the mother briefly engaged in a conversation about the MySpace.com
27  policy. During the discussion and unbeknownst to FOSTER, the mother's boyfriend crept up behind
28  FOSTER with a pipe wrench. The mother forcefully punched FOSTER two times in the face and

1  the boyfriend hit him in the back of the head with the pipe. FOSTER then fell forward, collapsing
2  on the attacking mother. At that point the oldest daughter picked up a metal chair and repeatedly
3  hit FOSTER while he was on the floor wrestling with the mother and step-dad.

4      16.    There were no other adult male staff present. The young female staff member and
5  other youth in the center at the time were in shock and desperately calling 911. FOSTER was
6  heavily bleeding from multiple blows to the head  Despite his wounds and the violent onslaught
7  FOSTER managed to regain a standing position. When he did so, the attackers fled the scene.

8      17.    About five minutes after the attackers left  the police arrived along with the
9  paramedics and the fire department. Blood was all over the computer room and in the hallway. An
10 ambulance took FOSTER to the Summit Medical Center emergency room. Soon after arriving,
11 FOSTER passed out and vomited. After a CAT scan, chest x-ray and physical, Michael was told
12 he has a concussion and a contusion on his right thigh. The five cuts on his head required a total
13 of 22 stitches.

14     18.    As a result of the savage and vicious attack, on November 29, 2007, FOSTER'S
15 treating provider Dr. Blake R. Collier diagnosed FOSTER with the following injuries: concussion,
16 Post Concussion Syndrom, cervical strain, Contusion of face scalp and neck, and contusion of lower
17 leg.

18     19.    In a letter dated January 4, 2007, Irene Lumague, a Return to Work Specialist for JT2
19 Integrated Resources informed FOSTER that he was participating in the City of Oakland's
20 Transitional duty Program. FOSTER was informed in the letter that he had been in the program
21 since November 29, 2007 and that his 90th day would be February 26, 2007.

22     20.    In a letter dated January 11, 2007,Gloria Vvalerio of JT2 Integrated Resources
23 informed FOSTER that his doctor thinks FOSTER may have physical limitations from the injuries
24 FOSTER sustained as a result of the attack. The letter goes on to inform FOSTER that his progress
25 would be monitored until his condition stabilized. Once FOSTER'S condition stabilized, there
26 would be an evaluation to determine the extent of his disability. Complainant is informed believes
27 and based upon this belief alleges that DEFENDANT had full knowledge of all correspondence
28 between JT2 and FOSTER.

1    21.     In addition, because of his cognitive problems, Mr. Foster was referred to the City Counseling Resource, where he saw a psychiatrist and underwent psychological treatments for his impairment. FOSTER is informed, believes, and based upon this information and belief alleges that the psychiatrist reported his findings to Kip Walsh at DEFENDANT CITY Department of Parks and Recreation. Ms. Walsh in turn was in communication with Gloria Vvalerio of JT2 Integrated. JT2 Integrated is a private company that handles worker compensation claims on behalf of public agencies, including the City of Oakland. In other words, DEFENDANT CITY provided

22.     JT2 Integrated twice informed Mr. Foster that his doctor thought he may have physical limitations from the injuries he sustained as a result of the attack and that his progress would be monitored until his condition stabilized. FOSTER is informed believes and based upon this information and believe alleges that DEFENDANT CITY knew about FOSTER'S disability since the worker compensation adjuster had made a recommendation that "his progress would be monitored until his condition stabilized."

23.     Finally, FOSTER kept his direct supervisor, Jennifer Koney, appraised of his health condition on a weekly basis. He discussed with Ms. Koney information about his disability and that his disability was limiting his ability to work effectively. In addition to the weekly updates, from about May 15, 2007 to the time of his termination in August 2007, FOSTER sent several memos to Ms. Koney, outlining his difficulties and progress with respect to how his condition was limiting his work. FOSTER also spoke freely of his difficulties with his memory and in conversations with FOSTER it was obvious that he had difficulties with word recall. Despite these discussions about how his disability was causing him difficulties DEFENDANT took no action to follow through on the accommodations prescribed in the two JT2 letters.

24.     Instead, in a letter dated March 26, 2007, Jones-Taylor informed FOSTER that as of April 9, 2007, he was assigned to oversee the programs, facility, and staff at the Brookdale Recreation Center (hereinafter "Brookdale"). In addition to making the transition into the new position directing Brookdale, the March 26, 2007 letter informed FOSTER, that he was also to assist in the transition of the Allendale programs. During FOSTER'S recovery, while he was participating in the City of Oakland's Transitional Duty Program, instead of making reasonable accommodations,

AMENDED COMPLAINT

5

Jones-Taylor and CITY effectively doubled FOSTER'S workload.

25. In a letter dated May 7, 2007, Irene Lumague, a Return to Work Specialist for JT2 Integrated Resources once agin informed FOSTER that he was participating in the City of Oakland's Transitional duty Program. FOSTER was informed in the letter that he had been in the program since April 7, 2007 and that his 90th day would be July 5, 2007. Both the January 4, 2007 and the May 7, 2007 letters from JT2 Integrated Resources stated: Please note this program is to help you return to work while you are recovering from your injury and with the assumption that you will be able to return to your usual and customary work. The transitional duty assignments and /or duties you will be doing are temporary and is NOT a permanent accommodation of your temporary work restrictions.

26. Despite FOSTER'S participation in a second 90-day Transitional Duty Program, Jones-Taylor took no steps to reasonably accommodate FOSTER'S need for modified duties and assignments. Additionally, despite still recovering from the traumatic attack, FOSTER spent the spring and summer months working to uplift the appearance of the center and the surrounding park, organize programs and events, and empower the center's staff. Though still recovering and dealing with the lingering effects of his head injury, FOSTER worked 12 to 14 hour days, six to seven days a week, as needed.

27. FOSTER asserted his disability and shared with his supervisor the limitations resulting from his disability. He told his direct supervisor, Ms. Koney, that he had trouble performing some of his duties and he asked for the accommodation of help with administrative duties. He also told his supervisor that the new assignment to Brookdale, while still working at Allensdale, was more than he could handle. Thereby asking for the accommodation of a reduced workload. DEFENDANT took no steps to accommodate FOSTER'S request for reasonable accommodations in the form or administrative support or a lightened workload.

28. On or around Friday, August 17, 2007, FOSTER was asked to report to a meeting with the Director of Oakland Parks and Recreation, Jones-Taylor and his immediate supervisor, Jennifer Koney. At this meeting FOSTER was informed that his probation was being terminated and that he was going to be placed on administrative leave until his official release on August 24,

AMENDED COMPLAINT
6

1 2007.

2  29. At the meeting Jones-Taylor told FOSTER that the reason she was releasing him was because he had not fulfilled his administrative duties in a timely manner and was not as sufficiently competent in completing administrative tasks as she would have liked. FOSTER was offered no opportunity to discuss the issue nor was he given the option to be reclassified as a Recreation Specialist, the position he held before he was promoted to Acting Director at Allendale.

30. Jones-Taylor'S act of firing FOSTER for the reasons given violated FOSTER'S rights under the ADA. Jones-Taylor took not steps to make reasonable accommodations for FOSTER'S injuries despite the fact that he was twice enrolled in the City of Oakland's Transitional Duty Program and specifically asked for the accommodations of administrative support and a lightened workload. Instead of modifying FOSTER'S work scheduled to enable him to continue to work while he recovered from his injuries, Jones-Taylor effectively doubled his workload and then fired him claiming he was not keeping up on his administrative duties. Had FOSTER been given the reasonable accommodations FOSTER would have had the opportunity to remedy any alleged deficiencies.

31. On or around October 11, 2007 FOSTER sent a letter to Jones-Taylor explaining her failure to accommodate FOSTER'S injuries and encouraging her to reinstate him. As of the filing of this Claim Jones-Taylor has failed to respond to FOSTER'S letter. The letter requested that Jones-Taylor reinstate FOSTER with the accommodations authorized by the Transitional Duty Program.

### FIRST CAUSE OF ACTION
**Disability Discrimination under ADA and FEHA**
Against all Defendants

32. PLAINTIFF incorporates by reference herein the proceeding paragraphs of the complaint as though set forth here in full.

33. PLAINTIFF is disabled, as defied by the Americans with Disabilities Act (ADA). 42 U.S.C. §§ 12102, 12111(8). On or around November 15, 2007, FOSTER was attacked and beaten in the head, face and body. FOSTER suffered serious injuries as a result of the attack. The injuries FOSTER sustained during the attack substantially limited PLAINTIFF's ability to work.

Specific limitations experienced by FOSTER as a result of the attack include but are not limited to the following: difficulty concentrating for long periods of time, difficulty recalling specific words when speaking, and frequent headaches. These injuries created a substantial limitation to FOSTER'S ability to work. Due to the nature and extent of FOSTER'S injuries Defendant CITY placed FOSTER in the Transitional Duty Program for two consecutive 90-day periods. Despite the understanding and acknowledgment by the CITY that FOSTER required accommodations, DEFENDANT doubled FOSTER'S work load instead of reducing it.

34. Despite his injuries, FOSTER was qualified for his position and would have been able to fulfil his duties with reasonable accommodations. FOSTER had numerous conversations with his supervisor explaining that his injuries were causing him limitations and trouble performing some of his duties and he asked for help or accommodation with administrative duties and a lightened workload.

35. DEFENDANT failed to provide FOSTER with reasonable accommodations as required under ADA and FEHA. Defendant knew or should have known that FOSTER required reasonable accommodations because DEFENDANT knew FOSTER was participating in the City of Oakland's Transitional Duty Program. Additionally, DEFENDANT had knowledge of FOSTER'S disabilities from FOSTER informing DEFENDANT and from the monitoring that accompanied the Transitional Duty Program.

36. Instead of providing reasonable accommodations for FOSTER, Defendant Jones-Taylor doubled his work-load. DEFENDANT then fired FOSTER, allegedly because he had not fulfilled his administrative duties. Had FOSTER been given accommodations he would have been able to remedy any alleged deficiencies.

37. FOSTER asserted his disability and shared with his supervisor the limitations resulting from his disability. He told his direct supervisor, Ms. Koney, that he had trouble performing some of his duties and he asked for help with administrative duties. He also told his supervisor that the new assignment to Brookdale, while still working at Allensdale, was more than he could handle. Thereby requesting the accommodation of a reduced workload. DEFENDANT took no steps to accommodate FOSTER'S request for reasonable accommodations in the form or

administrative support or a lightened workload.

38. As a direct and legal result of Defendants' conduct, FOSTER suffered the following injuries and damages. FOSTER was discharged from employment with Defendant CITY. PLAINTIFF suffered severe mental anguish and severe emotional distress as a result of the humiliation of being fired. FOSTER'S emotional distress and mental anguish is amplified by the fact that FOSTER is still suffering from the results of the attack.

Wherefore PLAINTIFF prays for relief as set forth herein.

## **PRAYER FOR RELIEF**

1. For economic and non-economic damages, including back pay and front pay, for all Causes of Action.

2. For prejudgment interest at the prevailing legal rate;

3. For costs of the suit including reasonable attorneys' fees;

4. For reinstatement of PLAINTIFF with full back pay;

6. For such other and further relief as the Court may deem proper.

DATED: August 1, 2008

**LAW OFFICES OF BONNER AND BONNER**

By: /s/ A. CABRAL BONNER
ATTORNEY FOR PLAINTIFF

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action.

DATED: August 1, 2008

**LAW OFFICES OF BONNER AND BONNER**

By: /s/ A. CABRAL BONNER
ATTORNEY FOR PLAINTIFF

AMENDED COMPLAINT
9