IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL FOSTER,

    Plaintiff,

v.

CITY OF OAKLAND, AUDREE JONES-TAYLOR, and DOES 1-50, inclusive,

    Defendants.

No. C-08-01944 EDL

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Foster ("Plaintiff") filed this action against his former employer, Defendant City of Oakland, and supervisor, Defendant Audree Jones-Taylor ("Defendants"), alleging violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and the California Fair Employment and Housing Act, Cal. Gov. Code § 12900 et seq. ("FEHA"). Before the Court is Defendants' Motion for Summary Judgment. The Court held a hearing on July 7, 2009. For the reasons stated at the hearing and in this Order, Defendants' Motion is granted in part and denied in part.

**BACKGROUND FACTS**

On June 3, 2006, Plaintiff was hired by the City's Office of Parks and Recreation as a part time Recreation Specialist I at the Allendale Recreation Center. Foster Decl. ¶ 3; Lee Decl. Ex. A at 24, 30-31. Plaintiff's supervisor was Jennifer Koney, who was the General Recreation Supervisor. Lee Decl. Ex. A at 35; Koney Decl. ¶ 1. Koney reported to Audree Jones-Taylor, who was the Director of the City's Office of Parks and Recreation. Koney Decl. ¶ 1; Jones-Taylor Decl. ¶ 1. Jones-Taylor had authority over employment decisions, and consulted Koney when assessing

Plaintiff's employment. Jones-Taylor Decl. ¶ 2. Kip Walsh was Jones-Taylor's assistant. Lee Decl. Ex. C at 8-9.

On August 7, 2006, Plaintiff was promoted to the position of acting Program Director at Allendale. Foster Decl. ¶ 6; Lee Decl. Ex. A at 35. Plaintiff understood that if he performed well in the acting director position, he would then become a director when a position became available. Foster Decl. ¶ 6; Lee Decl. Ex. A at 33-34. During Plaintiff's tenure as the acting director from September until November 2006, Koney observed that Plaintiff needed help with organization and paperwork and sometimes he had a hard time thinking of the exact word he wanted during a conversation, but that he had good visions for programs and started making connections with staff. Lee Decl. Ex. B at 28-29.

On November 14, 2006, Plaintiff was attacked with a metal chair and a wrench at Allendale by a young person and her family. Foster Decl. ¶ 10; Lee Decl. Ex. D. He was treated at the emergency room, where he was assessed with a closed head injury with loss of consciousness and multiple lacerations, and was released. Lee Decl. Ex. D. On November 21, 2006, Jones-Taylor sent an email stating that she appreciated Plaintiff's willingness to "jump back in the saddle." Foster Decl. Ex. 8.

On November 29, 2006, Plaintiff was examined by Blake Collier, a physician's assistant at the medical facility that handled the City's workers' compensation injuries. Walsh Decl. ¶ 8; Ex. L. Collier diagnosed Plaintiff with a concussion, post-concussion syndrome, cervical strain, contusions of face, scalp, neck and lower leg. Id. Collier noted that Plaintiff denied any focal neurological deficits, but that Plaintiff described feeling like he was in a mild fog. Id. Plaintiff told Collier that he wanted treatment for his neck so he could return to limited work. Id. Collier noted that Plaintiff could return to work on November 29, 2006 with a work restriction of administrative work limited to two hours per shift. Id. Plaintiff states that after the attack, he suffered severe cognitive impairment, was unable to return to work for five weeks, felt more irritable and emotional when he returned to work, and suffered bouts of anger and sadness. Foster Decl. ¶ 10. He also claims to have experienced a total memory loss initially, followed by a partial memory loss that persists today. Id.

On December 1, 2006, Plaintiff returned to Collier because even though he had been working with the duty restrictions, he awoke that morning feeling lightheaded or dizzy, with a foggy feeling on the right side of his head, but without any tingling, numbness, or other focal neurological symptoms. Lee Decl. Ex. E. On December 6, 2006, Plaintiff again returned to Collier. Walsh Decl. Ex. M. Plaintiff reported improvement in his symptoms, and his lightheadedness resolved after leaving the clinic on December 1. Id. He was released with the same restriction of no more than two hours of administrative work per day. Id.

On January 4, 2007, JT2 Integrated Resources, the City's third party workers' compensation administrator, sent Plaintiff a letter stating that he was in the City's transitional duty program. Walsh Decl. Ex. N. The letter advised that the program was designed to help him return to work with no restrictions, that the program would last for ninety days, and that the ninetieth day was February 26, 2007. Id. The letter also instructed Plaintiff that if he needed accommodations, he should contact the Equal Opportunity Programs Manager. Id. Plaintiff testified that he did not know that an accommodation was possible in his case. Lee Decl. Ex. A at 92.

On January 5, 2007, Plaintiff returned to Collier, asking to resume his regular work. Walsh Decl. Ex. O. Collier returned Plaintiff to his regular work. Id.; Lee Decl. Ex. B at 30-31. No restrictions were noted. Walsh Decl. Ex. O. After that date, the director of a local children's group advised him that the group would no longer be participating in after-school programs at Allendale because of multiple errors in transporting children. Koney Decl. Ex. R.

On January 22, 2007, Plaintiff requested to be seen by a neurologist. Lee Decl. Ex. F. Koney and Jones-Taylor were unaware of this request. Koney Decl. ¶ 3; Jones-Taylor Decl. ¶ 3.

On January 27, 2007, Plaintiff was formally appointed Recreation Program Director at Allendale. Foster Decl. ¶ 14. Koney had an orientation session with Plaintiff for that position. Lee Decl. Ex. B at 32, 36-37. At that time, Plaintiff did not communicate to Koney that he had limitations that were caused by lingering effects of the assault. Id. at 36. Koney observed that Plaintiff needed a lot of coaching, especially on organizational skills, meeting deadlines, preparing paperwork and developing programs. Id. at 37. She believed that he had good ideas, but had difficulty putting some of those ideas into reality. Id. Therefore, she developed a chart that would

3

list Plaintiff's assignments and expectations, as well as the due dates and status of each assignment. Id. Koney believed that the chart helped her see what areas Plaintiff needed assistance with, and also helped Plaintiff in understanding the scope of the work that was required. Id. at 38-39. Koney did not recall any conversations with Plaintiff from January through March 2007 in which he stated that he was having memory issues, any problems with concentration, difficulty articulating or remembering words, or other difficulties that were caused by the assault. Id. at 39. Jones-Taylor stated that after Plaintiff returned to work in January 2007, he appeared "timid and afraid to exercise any control over the center," and that the staff complained that he let children run around unsupervised with no discipline or control. Jones-Taylor Decl. ¶ 4.

On February 14, 2007, Plaintiff met with Koney to discuss his concerns about Allendale, including safety in the aftermath of the assault and asbestos. Koney Decl. Ex. S. The notes of that meeting do not mention any cognitive impairment that Plaintiff experienced as a result of his injuries. Id.

On March 26, 2007, Plaintiff was assigned to be the Director at Brookdale Recreation Center. Foster Decl. ¶ 16, Ex. 11; Lee Decl. Ex. A at 107; Ex. B at 51-52. During a transition period, Plaintiff was scheduled to continue to work three days as the Recreation Program Director at Allendale as well as two days as the Director at Brookdale. Foster Decl. ¶ 18. Plaintiff states that when he was assigned to both Allendale and Brookdale, he told Jones-Taylor that his mental condition and the aftermath of the assault would make it difficult for him to run two centers at once. Foster Decl. ¶ 17. Plaintiff testified that he told Koney that running two centers would be difficult for him. Lee Decl. Ex. A at 108-09. But he agreed to the assignment, although he states that he did not think he had the option of turning it down because he was on probation. Lee Decl. Ex. A at 113-14. Plaintiff found it difficult to focus on all of the specific assignments because of the need to resolve basic issues at each center. Foster Decl. ¶ 21.

On March 27, 2007, Plaintiff underwent a Qualified Medical Examination by Dr. Barbara McQuinn. Foster Decl. ¶ 11. Dr. McQuinn noted that Plaintiff had "very mild subjective cognitive deficits that are in fact typical with closed head injury, namely, difficulties with word retrieval, sequencing, and by self report, some difficulty with multi-tasking and irritability." Foster Decl. Ex.

6(b) at 4. Dr. McQuinn concluded that Plaintiff was permanent and stationary, and that she did not "see that his present mild cognitive difficulties would cause significant work restriction or compromise his ability to perform his present job." Id. She stated that: "He is apparently able to function successfully in his occupation of choice, and thus vocational rehabilitation is not an issue." Id. This report was sent to Gloria Valerio of JT2 Integrated Resources. Id. Koney and Jones-Taylor did not receive a copy of the report. Koney Decl. ¶ 5; Jones-Taylor Decl. ¶ 6.

During this time, Plaintiff believed his job performance was adequate. Id. ¶ 23; Ex. 13. From April 9 through May 21, 2007, Koney met with Plaintiff regularly to provide support and assistance. Lee Decl. Ex. B at 57-58. One of Plaintiff's main shortcomings was his inability to master RecWare (the City's program to track attendance at and participation in recreation programs), which was a critical part of his job, and Koney brought in a part-time staff person to help with the RecWare issues. Lee Decl. Ex. B at 59. On May 21, 2007, Plaintiff was assigned solely to Brookdale. Foster Decl. ¶ 25.

From the time between May 2007, when Plaintiff was assigned to Brookdale full-time, to his termination date of August 17, 2007, Koney met with Plaintiff on at least six different occasions for progress meetings. Koney Decl. ¶ 11. At each meeting, Koney reviewed and updated the Summary and Status of Job Expectations that she had created. Koney Decl. ¶ 12; Ex. T (job expectations memo from July 25, 2007); Foster Decl. Ex. 16 (job expectations memo from June 13, 2007). According to Defendants, Plaintiff failed to meet several job requirements. Jones-Taylor Decl. Ex. P. One of the ways he failed to meet job expectations was that he was overbudget on at least two occasions. On July 24, 2007, Koney notified Plaintiff that he exceeded his $1000 weekly budget by $1,800. Koney Decl. ¶ 13; Ex. U. On July 31, 2007, Koney notified Plaintiff that he had exceeded his budget for the week of July 28, 2007 by $2,105.34. Koney Decl. ¶ 14; Ex. V. Plaintiff states in his declaration that he did not believe it was possible to develop programs within the budget he had, and that he would find a solution by holding fundraisers later in the year. Foster Decl. ¶ 45. He states that he was also negotiating a $25,000 donation to the center. Id. He states that he told Koney that he needed help with the budget, which he received, but he did not tell her that the budget problems were a result of any cognitive issues. Id.; Lee Decl. Ex. A at 84, 168.

5

Further, Plaintiff arranged for a crew to clean outside areas at Brookdale, but did not give them any instruction or supervision, so the crew destroyed a garden at the Recreation Center. Koney Decl. Ex. W. Also in July, Plaintiff allowed a volunteer to work at Brookdale who was not fingerprinted and cleared by the City. Koney Decl. Ex. X. Plaintiff states in his declaration that the volunteer was at the Brookdale center when he arrived there, and that the volunteer told him that she was a volunteer at the science center next door. Foster Decl. ¶ 46.

On August 7, 2007, Jones-Taylor recommended Plaintiff's dismissal to the City Administrator. Jones-Taylor Decl. Ex. P. On August 17, 2007, Plaintiff met with Koney and Jones-Taylor, who informed him that he was being released from his probationary period. Foster Decl. ¶ 26; Lee Decl. Ex. B at 139. Plaintiff protested his termination. Lee Decl. Ex. A at 58-70.

On August 31, 2007, Plaintiff filed a grievance through the union, which was rejected as untimely. Lee Decl. Ex. J. On October 2, 2007, Plaintiff emailed a note to the City's Office of Parks and Recreation further explaining his circumstances. Lee Decl. Ex. K. On October 13, 2007, Plaintiff wrote another letter to Jones-Taylor claiming that he had issues related to the ongoing recovery from his head injury. Jones-Taylor Decl. Ex. Q. On April 11, 2008, Plaintiff filed this lawsuit.

**LEGAL STANDARD**

Summary judgment shall be granted if: "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must view the facts in the light most favorable to the non- moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

**DISCUSSION**

**1.     Plaintiff's Release from Probation**

State and federal law analyze disability discrimination claims under the three-step process from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973):

> First, it is the plaintiff's burden to prove by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff proves the prima facie case, then the burden shifts to the defendant to [articulate a] legitimate nondiscriminatory reason for its employment decision. Third, if the defendant [offers such a reason], then the plaintiff must have an opportunity to show by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination....'

Arteaga v. Brink's Inc., 163 Cal.App.4th 327, 343 (2008) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255, fn. 8 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Defendants argue that Plaintiff cannot prove a prima facie case of disability discrimination, and that even if he can, Defendants terminated Plaintiff for legitimate business reasons that were not pretextual.

**A.     Prima facie case**

To establish a prima facie case of disability discrimination under the ADA, Plaintiff must prove that: (1) he is a disabled person within the meaning of the ADA; (2) he is a qualified individual, meaning he can perform the essential functions of his job; and (3) Defendant terminated him because of his disability. See Nunes v. Wal-Mart, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999). To establish a prima facie case of disability discrimination under FEHA, Plaintiff must prove that: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; (3) he suffered an adverse employment action; and (4) Defendant harbored discriminatory intent. Avila v. Continental

7

Airlines, 165 Cal. App. 4th 1237, 1246 (2008). Because the FEHA provisions relating to disability discrimination are based on the ADA, the state and federal disability claims may be analyzed together in the absence of contrary or different law on a particular issue. Humphrey v. Memorial Hosps. Ass'n, 239 F.3d 1128, 1133 n. 6 (9th Cir. 2001).

### i. Disabled person

Under the ADA, disability is defined as a physical or mental impairment that substantially limits one or more major life activities, such as working, record of such an impairment or being regarded as having such an impairment. See 42 U.S.C. § 12102(1). The extent to which a purported disability limits one or more of the major life activities is an "individualized inquiry," requiring consideration of "the nature and severity of the impairment, the duration or expected duration of the impairment, as well as the permanent or long term impact of the impairment." Fraser v. Goodale, 342 F.3d 1032, 1038-39 (9th Cir. 2003). The Ninth Circuit "does not require comparative or medical evidence to establish a genuine issue of material fact" for purposes of summary judgment. Head v. Glacier Northwest., Inc., 413 F.3d 1053, 1058 (9th Cir. 2005). Instead, a "plaintiff's testimony may suffice to establish a genuine issue of material fact," so long as that testimony "contains sufficient detail to convey the existence of an impairment." Head, 413 F.3d at 1058-59.

Under FEHA, mental disability is defined as: (1) having a mental or psychological disorder or condition that limits a major life activity, including working; (2) any other mental or psychological disorder or condition that requires special education or related services; (3) having a record or history of a mental or psychological disorder or condition which is known to the employer or other entity covered by this part; or (4) being regarded or treated by the employer as having, or having had, any mental condition that makes achievement of a major life activity difficult. See Cal. Gov't Code § 12926(i); Arteaga, 163 Cal.App.4th at 345. The Legislature has stated:

> The law of this state in the area of disabilities provides protections independent from those in the federal Americans with Disabilities Act of 1990 (Public Law 101-336). Although the federal act provides a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional protections. . . . In addition, the Legislature has determined that the definitions of "physical disability" and "mental disability" under the law of this state require a "limitation" upon a major life activity, but do not require, as does the Americans with Disabilities Act of 1990, a "substantial limitation." This distinction is intended to result in broader coverage under the law of this state than under that federal act. Under the law of this state, whether a condition limits a major life activity shall be determined without respect to

8

United States District Court
For the Northern District of California

> any mitigating measures, unless the mitigating measure itself limits a major life activity, regardless of federal law under the Americans with Disabilities Act of 1990. Further, under the law of this state, "working" is a major life activity, regardless of whether the actual or perceived working limitation implicates a particular employment or a class or broad range of employments.

Govt Code sec. 12926.1. "A mental or psychological disorder or condition limits a major life activity if it makes the achievement of the major life activity difficult." Gov't Code sec. 12926(i)(1)(B); see also Bryan v. United Parcel Serv., 307 F. Supp. 2d 1108, 1115 (N.D. Cal. 2004) ("In recognition of that purpose, this order holds that plaintiffs' exclusion from the single position of full-time UPS package-car driver, notwithstanding their ability to perform other jobs (both within and outside of UPS), constitutes a limitation on the major life activity of 'working' and thus is sufficient to support a finding of disability under FEHA.").

Here, examining the evidence in the light most favorable to Plaintiff, there is a triable issue of fact as to whether he is disabled, under the more lenient standard of FEHA. Collier diagnosed Plaintiff with a concussion and post-concussion syndrome in November 29, 2006, and returned Plaintiff to work in January 2007 with no restrictions or accommodations noted. However, McQuinn's report of March 2007 describes Plaintiff's condition as: "Status post concussion from industrial closed head injury." McQuinn further stated that: "I would consider him Permanent and Stationary at this point and do not see that his present mild cognitive difficulties would cause significant work restriction or compromise his ability to perform his present job." Foster Decl. Ex. 6(b). Plaintiff testified that his cognitive difficulties did not prevent him from doing his job, but the problems made his job more difficult. Lee Decl. Ex. A at 81. Plaintiff told Koney that he had speech issues and memory issues, and informed her of his struggles with focus and retention of information. Lee Decl. Ex. A at 75, 83. He also asked for help from time to time. Id. at 84. Further, Plaintiff testified that his inability to arrive on time for meetings with Koney was related to his cognitive issues. See id. at 133. In addition, Jones-Taylor stated that Plaintiff was "timid and afraid to exercise control over the center" when he returned to work, and that he let the children run unsupervised. Jones-Taylor Decl. ¶ 4. Most importantly, while Plaintiff was managing the Allendale and Brookdale centers, he told Koney that: "In view of the fact that I'm still, you know, dealing with post-concussion related issues, [managing both Allendale and Brookdale] might be too

9

much. . . I'm thinking this might be too much." Lee Decl. Ex. A at 112.

The question of whether Plaintiff is disabled under the heightened "substantially limits" standard of the ADA is a closer one, because the medical evidence of disability is that his cognitive difficulties were only "mild." Foster Decl. Ex. 6(b). As Plaintiff may proceed with his otherwise overlapping FEHA claim, however, which would require similar proof and which could result in the same remedies, the Court will not grant summary judgment against the ADA claim at this time.

### ii. Qualified individual

Under the ADA and FEHA, a qualified individual is one with a disability who, with or without reasonable accommodation, can perform the essential functions of the job the individual holds. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996); Jensen v. Wells Fargo Bank, 85 Cal.App.4th 245, 255 (2000). Plaintiff bears the burden of demonstrating that he can perform the essential functions of the job with or without reasonable accommodations. Kennedy, 90 F.3d at 1481.

Here, examining the evidence in the light most favorable to Plaintiff, there is a triable issue of fact as to whether he was a qualified individual. Although there is evidence that Plaintiff failed to meet at least some of the requirements of his job, such as staying within his budget or entering programs on RecWare, there is also evidence that Plaintiff was meeting other expectations of his job. Jones-Taylor testified that Plaintiff was being transferred to Brookdale in part because she believed it would be better to get Plaintiff out of the environment where he was attacked (Lagarde Decl. Ex. 2 at 54-56), but she also sent a letter to Plaintiff on March 26, 2007 stating that she believed Plaintiff's energy and enthusiasm would "do wonders for" Brookdale, and that she appreciated his hard work and dedication. Foster Decl. Ex. 11. Koney testified that Plaintiff was chosen for the Brookdale job because he had knowledge of the neighborhood, he lived in the area, and his current assignment was in the area, so he had community relationships. Lee Decl. Ex. B at 52. Regardless of the stated reasons, the fact that his manager chose to give Plaintiff the responsibility, even temporarily, for managing two centers supports an inference that he was capable of performing the essential elements of his job.

### iii. Termination related to disability

As part of the prima facie case under the ADA, Plaintiff must show that he was terminated because of his disability. Burdine, 450 U.S. 248, 253 (1981). To prove an ADA and FEHA claim, a plaintiff must prove that the employer had knowledge of the employee's disability when the adverse employment decision was made. Brundage v. Hahn, 57 Cal.App.4th 228, 236-37 (1997).

Examining the evidence in the light most favorable to Plaintiff, there is a triable issue of fact as to whether Defendants had knowledge of Plaintiff's disability when he was terminated. This is the somewhat unusual case in which the employer had actual notice of the disability at the time it occurred because Plaintiff was severely injured by an assault at work and did not return to full time work for almost two months, and was terminated only approximately seven months later while his supervisors were still very much aware of the assault. After Plaintiff returned to work after the assault, he told Koney that he was having trouble focusing and verbalizing. See Lee Decl. Ex. A at 83. Plaintiff stated that in March 2007, when he was given management responsibility for both Allendale and Brookdale, he told Jones-Taylor that: "my mental condition and the aftermath of the concussion I suffered would make it difficult for me to run two centers at once." Foster Decl. ¶ 17. Plaintiff also testified that he believes that he told Koney during the time period when he was managing both centers from March until May 2007 that: "In view of the fact that I'm still, you know, dealing with concussion-related issues, it might be too much . . . I'm thinking this might be too much." See Lee Decl. Ex. A at 112. Plaintiff testified that he told Koney sometime between May and July 2007 that his failure to attend or to arrive on time to meetings with her had to do with his cognitive issues. See Lee Decl. Ex. A at 133. Plaintiff's statements to his supervisors during the seven months between his return to work and his termination are sufficient to raise a triable issue of fact that Defendants had knowledge of his disability when he was terminated on August 17, 2007.

**B.     Legitimate business reasons**

When a plaintiff establishes a prima facie case for disability discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory or retaliatory conduct. Surrell v. Cal. Water Serv., 518 F.3d 1097, 1106 (9th Cir. 2008); Mixon v. Fair Employment & Housing Comm'n, 192 Cal.App.3d 1306, 1316-19 (1987) (adopting the standards set by the United States Supreme Court for proving intentional discrimination). An

employer need not persuade the court that it had convincing objective reasons for the termination. Burdine, 450 U.S. at 254-55, 257.

Here, there is undisputed evidence that Plaintiff failed to fulfill many of the requirements for his job. Specifically, it is undisputed that Plaintiff was overbudget at least twice. In fact, Plaintiff states that he did not think that the budget was high enough to allow him to run the center, and that he would make up for it later with fundraisers. He does not dispute that he failed to enter programs into the RecWare system. It is undisputed that Allendale staff complained that Plaintiff let children run unsupervised; Plaintiff states that there was one incident at Allendale where a teenager was loud and wild. Foster Decl. ¶ 47. Plaintiff concedes that he did not create a business plan on time, but argues that only three of the eleven directors did so. Foster Decl. ¶ 32; Ex.15. He does not dispute that while he was at Allendale, he did not initiate a partnership with Laurel School, which was a task that was assigned to him. Id. ¶ 34. Plaintiff does not dispute that he did not begin a landscaping care program, but explains that landscaping projects had to be brought to the advisory board and that he worked with Public Works to upgrade the park area. Id. ¶ 35. He does not dispute that he did not fully promote Brookdale as a rental facility. Id. ¶ 36. He does not dispute that a tennis program was not developed within the timeframe required. Id. ¶ 37. He does not dispute that he did not have any plans for a job preparation workshop or a senior day program in place, even though the due date was September 14, 2007. Id. ¶ 38-39. Plaintiff does not dispute that he failed to submit an incident report. Id. ¶ 41. Plaintiff does not dispute that he was late to meetings with Koney. Id. ¶ 48.

Plaintiff argues that he did fulfill at least some of the job requirements. Specifically, Plaintiff produced and passed out flyers for programs at Brookdale, and led the Parks for Peace program. Foster Decl. at ¶ 40. However, these accomplishments are insufficient to show that all of Defendants' reasons for Plaintiff's termination were not legitimate. Further, Plaintiff points to "Employee Performance Appraisal Forms," and argues that none of those Forms put him on notice of any job deficiencies. To the extent that Plaintiff is referring to the Form for the March 1 through March 27, 2007 evaluation period (Id. at Ex. 13), that Form does not appear to be an appraisal, but instead appears to be a performance plan containing no specific feedback on Plaintiff's performance. Plaintiff also points to a certificate he received on March 7, 2007 from the Community Policing

12

Advisory Board for the City of Oakland for his work in community policing (Id. at ¶ 24; Ex. 14(+), but there has been no showing that any of the decisionmakers in this case were involved with the certificate.

Even examining the evidence in the light most favorable to Plaintiff, Defendants have met their burden of showing legitimate non-discriminatory reasons for Plaintiff's termination.

**C.     Pretext**

If an employer articulates a legitimate reason for its action, the presumption of discrimination drops out, and the plaintiff must offer evidence that the employer's proffered non-discriminatory reasons are merely a pretext for discrimination. Surrell, 518 F.3d at 1106. Pretext may be demonstrated by direct evidence showing that unlawful discrimination more likely motivated the employer, or by indirect evidence showing that an employer's reasons are unworthy of credence because they are internally inconsistent or otherwise not believable. Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000). A plaintiff must produce specific and substantial evidence that the defendant's reasons are really a pretext for discrimination. Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 661 (9th Cir. 2002).

Defendants released Plaintiff from his probation because:  (1) he did not remain within budget; (2) he did not develop a projected budget; (3) he failed to establish a tennis program requested by the community; (4) he failed to complete Program Planners for Fall 2007 programs due in April 2007; (5) he failed to initiate a partnership with Laurel School; (6) he failed to initiate a landscaping care program; (7) he failed to market Brookdale as a rental facility; (8) he failed to develop tennis and swim teams for two centers; (9) he failed to provide participants in a track meet; (10) he failed to recruit and retain participants in the Allendale passport program; (11) he enrolled only forty-five participants in a summer camp program that had capacity of 135; (12) he initiated a partnership with California Arts and Development for a $2,500 program without approval; (13) he had an unauthorized volunteer at Brookdale; (14) he failed to submit an incident report and failed to submit several key assignments and a business plan; and (15) he was late for meetings with Koney. Jones-Taylor Decl. Ex. P. Plaintiff offers excuses or reasons for each of these job deficiencies, but as described above, he does not dispute many of them. For example, Plaintiff explained that he did

13

not have experience with budgeting and that he received assistance from Koney to finalize a budget in July 2007. See Foster Decl. ¶ 31, 45; Lagarde Decl. Ex. 3 at 29. However, Plaintiff admitted that he was overbudget at least twice, although he stated that he intended to organize fundraisers and negotiate a $25,000 donation. See Foster Decl. ¶ 45. Further, Plaintiff admitted that he failed to submit a business plan. Foster Decl. ¶ 32. As another example, Plaintiff explained that the unscreened volunteer was already at Brookdale when he arrived (Foster Decl. ¶ 46), yet he does not dispute that he retained this person at Brookdale even after he got there. Even if Plaintiff did perform some aspects of his job, such as creating a chess club flyer (Foster Decl. ¶ 33), promoting Brookdale as a rental facility (Foster Decl. ¶ 36), and controlling children at Allendale (Foster Decl. ¶ 47), these tasks do not demonstrate that Defendants' termination decision, which was based on a number of factors, was pretextual.

Plaintiff argues that pretext is shown based on Defendants' shifting or retracted justifications for the termination. See Payne v. Norwest Corp., 113 F.3d 1079, 1080 ( Cir. 1997) (providing shifting reasons for termination in EEOC proceedings and in litigation shows an inference of pretext); Villiarimo, 281 F.3d 1054 (9th Cir. 2002) (Pretext "is not shown where an employer simply supplemented its explanation where there has been no retraction of any of its reasons, nor are any of its reasons inconsistent or conflicting.") (quoting Johnson v. Nordstrom, Inc., 260 F.3d 727, 733-34 (7th Cir. 2001)). Plaintiff argues in a conclusory fashion that Defendants have shifting, retracting and inconsistent reasons for moving him to Brookdale, which raises a triable issue of fact as to pretext. The explanations were not incompatible. See Nidds v. Schndler Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1996). Moreover, the reasons for his transfer are irrelevant to whether he was subsequently released from his employment for a legitimate reason relating to his post-Brookdale employment.

Plaintiff has failed to provide evidence constituting direct or indirect evidence that Defendants' conduct was pretextual. Therefore, Defendants' Motion for Summary Judgment is granted as to Plaintiff's claim based on his termination.

**2.     Failure to accommodate**

Plaintiff's amended complaint does not expressly set out a separate claim for failure to

14

accommodate, but reasonably construed, it includes such a claim. Similar to a claim based on termination, to prevail on a failure to accommodate claim, Plaintiff must establish that he suffers from a disability covered by FEHA or the ADA, that he is a qualified individual and that there was a failure to accommodate. Jensen, 85 Cal.App.4th at 256; Wilson v. Sunsweet Growers, Inc., 2007 U.S. Dist. LEXIS 64845 at *14-15 (E.D. Cal. Aug. 24, 2007). Both the ADA and FEHA require employers to make reasonable accommodations for known physical or mental disabilities.

Under the ADA, an employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A); see also 42 U.S.C. § 12112(b)(5) (defining discrimination as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."). Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. Humphrey, 239 F.3d at 1137. Further:

> . . . [T]he interactive process for finding a reasonable accommodation may be triggered by the employer's recognition of the need for such an accommodation, even if the employee does not specifically make the request. The exception to the general rule that an employee must make an initial request applies, however, only when the employer "(1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3) knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation." Barnett went on to explain that the employer is required to initiate the interactive process only when "an employee is unable to make such a request" and "the company knows of the existence of the employee's disability."

Brown v. Lucky Stores, 246 F.3d 1182, 1188 (9th Cir. 2001) (internal citations omitted) (citing Barnett, 228 F.3d at 1114, vacated on other grounds, U.S. Airways v. Barnett, 535 U.S. 391

(2002));[1] see also Surrell, 518 F.3d at 1109 (failure to accommodate claim failed because the plaintiff was given medical leave each time she asked for it and did not know of any accommodation her employer could have made for claimed disability).

Under FEHA, the failure of an employer to make reasonable accommodations for the known disabilities of an employee constitutes an unlawful employment practice. Cal. Gov't Code § 12940(m). The duty to accommodate an employee's disability arises when the employer has knowledge that the employee is disabled. U.S. Airways v. Barnett, 535 U.S. 391, 396 (2002); Zivkivic v. Southern Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002); Avila, 165 Cal.App.4th at 1252-53; see also King v. United Parcel Serv., 152 Cal.App.4th 426, 443 (2007) ("'[T]he interactive process of fashioning an appropriate accommodation lies primarily with the employee.' An employee cannot demand clairvoyance of his employer. "'[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge.'" "'It is an employee's responsibility to understand his or her own physical or mental condition well enough to present the employer at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee.'" Plaintiff therefore was obliged "'to tender a specific request for a necessary accommodation.'") (internal citations omitted).

Plaintiff argues that by unilaterally assigning Plaintiff to manage both the Allendale and Brookdale centers on a temporary basis, Defendants failed to accommodate him and, indeed, did just the opposite, and failed to engage in the interactive process once they knew of his disability. The Court concludes that there is a triable issue of fact as to the failure to accommodate claim.

As described above, Plaintiff has raised a triable issue of fact as to whether he was disabled, whether he was a qualified individual and whether Defendants had notice of his disability. Defendants point to some testimony by Plaintiff supporting their position that he did not seek a

---

[1] Plaintiff does not claim that he because of his disability, he was unable to request a reasonable accommodation. See Opp'n at 22 ("Since Mr. Foster's managers allegedly recognized Mr. Foster's need for accommodations the third requirement of Barnett and Brown that the disability prevents the employee from requesting a reasonable accommodation is moot.").

16

specific accommodation for his disability. See, e.g., Lee Decl. Ex. A at 85-86. But Plaintiff also testified that he told Koney during the time he was managing two centers that: "In view of the fact that I'm still, you know, dealing with concussion-related issues, it might be too much. . . I'm thinking this might be too much." Lee Decl. Ex. A at 112. Plaintiff told Koney that he felt that his workload was too heavy when he was managing two centers and starting the Parks for Peace program, but was told that the department was short-handed so there was no one else to assist him. Lee Decl. Ex. A at 103. Plaintiff told Koney at least once that managing two centers was a problem for him, and that the assignment was "extremely difficult," and that he did not know if he could do it. Lee Decl. Ex. A at 108-109. Also, Plaintiff told Jones-Taylor in March 2007 that his "mental condition and the aftermath of the concussion I suffered would make it difficult for me to run two centers at once." Foster Decl. ¶ 17. Thus, he did raise the issue of not increasing his workload in light of his problems, although he was concerned about asking for less work while on probation, so he did not further press the issue. Lee Decl. Ex. A at 86.

Defendants' obligation to engage in the interactive process to find reasonable accommodations was triggered once Plaintiff informed his supervisors that he was concerned about handling the increased responsibility for two centers at once in relation to his injuries and resulting disability. Zivkovic, 302 F.3d at 1089. While the question is a close one, drawing the inferences in favor of Plaintiff, as the Court must, the evidence demonstrating that Plaintiff informed Defendants that he was having difficulties related to the aftermath of his concussion heading both centers at the same time, in combination with Defendants' knowledge of the assault a few months before causing a closed head injury, creates a triable issue of fact as to whether Defendants failed to engage in the interactive process to accommodate Plaintiff's alleged disability. Plaintiff explained to his supervisors that running two centers simultaneously by himself posed special difficulties, which can be construed as a request that Defendants accommodate him by only assigning him to one center or by providing further assistance.

Similarly, there is a triable issue of fact as to whether Defendants sufficiently provided Plaintiff with a reasonable accommodation. There is evidence that Defendants offered assistance to Plaintiff with budgeting issues,and that Radical Rovers, an organization that provides programs to

17

hard-to-reach youth, was going to take over managing the Allendale center. Lee Decl. Ex. A at 84; 112; Ex. B at 89. Yet Plaintiff remained as the manager of the two centers for approximately eight weeks, from March 26, 2007 through May 21, 2007, despite his statement to Jones-Taylor in late March 2007 that managing two centers would be difficult for him in light of the "aftermath of the concussion." Foster Decl. ¶ 17. Further, Koney testified that there were other individuals who could have taken over Brookdale. Lagarde Decl. Ex. 3 at 52.

Accordingly, Defendants' Motion for Summary Judgment based on the failure to accommodate is denied.

**CONCLUSION**

Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's claim for disability discrimination based on his release from probation, but denied with respect to Plaintiff's claim for failure to accommodate. This matter is referred to a magistrate judge to conduct a settlement conference as soon as possible.

**OBJECTIONS TO EVIDENCE**

Defendants filed objections to some of Plaintiff's evidence in support of Plaintiff's opposition to Defendants' Motion for Summary Judgment. Plaintiff did not file any response to these objections.

**Dr. McQuinn's September 24, 2008 report (Foster Decl. Ex. 7)**

Defendants' objection based on relevance is sustained. Dr. McQuinn's report was made following an examination that took place more than one year after Plaintiff was released from probation. Further, Defendants' objection based on authentication is sustained because Plaintiff's declaration does not authenticate the report.

**MacArthur Metro article (Foster Decl. ¶ 14; Ex. 9)**

Defendants' objection based on hearsay is granted to the extent that statements made by Plaintiff to a reporter are not evidence that Plaintiff continued to have treatment as a result of his injuries. Defendants' objection is overruled to the extent that the article is provided to show notice to Defendants.

**Letter from Nefeesa Ahmad-Bey (Foster Decl. Ex. 10)**

18

Exhibit 10 is an August 2008 letter from Plaintiff's domestic partner. Defendants' objection based on relevance is sustained because the letter is dated in August 2008, long after Plaintiff was released from his probation and there is no showing that it was even sent to Defendants. Defendants' objection based on hearsay is sustained to the extent that the letter purports to state what Plaintiff told Ms. Ahmad-Bey and that the statements are used to prove the truth of the matters asserted. The Court need not reach the other objections.

**Foster Declaration, paragraph 17**

Paragraph 17 states:

> When Ms. Jones-Taylor gave me the letter, I told her that my mental condition and the aftermath of the concussion I suffered would make it difficult for me to run two centers at once. In response to my concerns, she stated that she would make sure I get the support I need and that she would instruct my supervisor, Jennifer Koney to also give me the support I need. I felt I did not have a choice. Since I was on probation, I decided to at least try to do both jobs at once.

Defendants object that this is self-serving testimony that should not be considered to raise a triable issue of fact because it directly contradicts his deposition testimony on the matter, where he told Jones-Taylor that he would try to fulfill the responsibility. See Lee Decl. Ex. A at 113-114; 143-44; Villiarimo v. Aloha Island Air, 281 F.3d 1054, 1061 (9th Cir. 2002). However, the declaration does not directly contradict Plaintiff's deposition. Defendants' objection on this basis is overruled.

**Letters of support to Jones-Taylor (Foster Decl. Ex. 23)**

Plaintiff submitted two letters of support, one from August 2007 and one from August 2008, showing general support for Plaintiff. Defendants' relevance objection is sustained; the letters are irrelevant because they were written after Plaintiff was released from his probation. Defendants' objection based on hearsay is sustained to the extent that the letters purport to state what Plaintiff told the authors and that the statements are used to prove the truth of the matters asserted. The Court need not reach the other objections.

**Declaration of Kevin McTighe**

Defendants' objection based on untimeliness because this declaration was filed without leave of court six days after Plaintiff's opposition was filed is sustained. Even if it were not, Defendants'

relevance objection to paragraphs four and five is sustained. McTighe's view as to whether Plaintiff's termination was in compliance with the due process requirements of the applicable Memorandum of Understanding is irrelevant to the question in this case of whether Plaintiff was discriminated against on the basis of a disability. Further, McTighe's statements are inadmissible opinion testimony to the extent he opines on the legality of Plaintiff's release from probation.

Further, Defendants' relevance objection to paragraph ten is sustained. Paragraph 10 states that McTighe knows of other center directors who had budget problems and problems with RecWare, but there is no information as to whether these other directors were disabled or similarly situated to Plaintiff or whether those other directors were terminated for budget or RecWare problems.

**IT IS SO ORDERED.**

Dated: August 11, 2009

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge